**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD T. HOOPER, et al., | No. C 06-2149 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

On November 3, 2006, the Court heard oral argument on defendants' motion to dismiss. Having considered the arguments of counsel and the papers submitted, the Court concludes that plaintiffs' action is time-barred and hereby GRANTS defendants' motion without leave to amend.

## BACKGROUND

On July 3, 1957, the United States filed a Condemnation Complaint in the Northern District of California, *United States v. 308.00 acres of land, more or less, situate in Mendocino County, State of California, VICTOR M. BRIGGS, also known as VICTOR BRIGGS, et al., and UNKNOWN OWNERS.* Coda Decl. Ex. 1. Of the 308 acres sought, 288 acres were owned by Leon Hooper, Francis Hooper, and Muriel Hooper ("Hoopers"). The Condemnation Complaint stated that the purpose for the taking was flood control, and that interest to be acquired was a fee simple title, "subject to existing easements for public roads and highways, public utilities, railroads, and pipelines." *Id.* The government filed a Notice of Condemnation with the complaint which provided notice of the taking to all persons who might claim an interest in the 308 acres. *Id.* Ex. 2.

On July 19, 1957, a Declaration of Taking ("DT") was filed.[1]  *Id.* Ex. 3.  The DT stated, *inter alia*, that the estate taken is "the fee simple title, subject to existing easements for public roads and highways, public utilities, railroads, and pipelines," and estimated the just compensation for the Hoopers' land as $150,900.00.  *Id.* Ex. 3 at 11.  On August 22, 1957, the Hoopers and the United States filed a signed Stipulation for Entry of Judgment and Order Directing Payment of Money which stated that the United States and the Hoopers agreed that $150,360.00 was "full, adequate and just compensation" for the taking of the Hoopers' land.  *Id.* Ex. 5 at 2.  The next day, the federal court signed an Order on Stipulation directing the Clerk to pay that sum to the Hoopers as "full, adequate and just compensation for the taking."  *Id.*  On October 1, 1957, the court entered a Final Judgment as to the Hoopers' land.  *Id.* Ex. 6.

The Hoopers also owned approximately 1,095 acres that were not subject to the government's taking.  This land, referred to as the Hooper Ranch by plaintiffs, is located adjacent to the condemned property.  As a result of the 1957 taking, the Hooper Ranch became completely landlocked with no legal right of access.  Compl. ¶¶ 7-8.  According to the complaint, after the taking and until the late 1970s or early 1980s, plaintiffs (who are the current owners of the Hooper Ranch) had "unimpeded" access to the Hooper Ranch through a road across the land taken by the government.  *Id.* ¶ 11.  In 1984, the government issued a five year license to Mr. Laird Hooper to traverse the condemned land.  *Id.* ¶ 11, Ex. F.  The license was extended in 1989, 1994 and 2000 for additional five-year terms.  *Id.*  The complaint alleges that over the years, plaintiffs have repeatedly requested permanent and legal access to the Hooper Ranch; these requests have been denied.  *Id.* ¶ 13.

On March 23, 2006, plaintiffs, the heirs of the Hoopers, filed the instant action seeking an easement by necessity to gain permanent access to their land, which in 1994 was divided into thirteen legal parcels.  *See* Carle Decl. Ex. H.

---

[1]  40 U.S.C. § 3114 provides, *inter alia*, "On filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration– (1) title to the estate or interest specified in the declaration vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation."  40 U.S.C. § 3114(b).

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the jurisdiction over the subject matter of the complaint. The party invoking the jurisdiction bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994). Under this standard, all factual allegations pled by the plaintiff must be accepted as true and construed in the light most favorable to the plaintiff. *See NL Indus. V. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1984).

Under Federal Rule of Civil Procedure 12(b)(6) a district court must dismiss a complaint if it fails to state a claim upon which relief may be granted. The Court must take the plaintiff's allegation as true and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

**DISCUSSION**

As an initial matter the United States contends that the case should be dismissed for lack of subject matter jurisdiction because the United States did not consent to being sued. *See Block v. North Dakota*, 461 U.S. 273 (1983). Plaintiffs assert that although they did not specifically allege a claim under the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"), they intended to proceed under that statute,[2] and the QTA contains an explicit waiver of sovereign immunity. Defendants counter that as a matter of law, plaintiffs cannot bring a claim for an easement by necessity under the QTA, and further that title acquired through condemnation proceedings should not be subject to attack later in QTA actions.

It appears that whether a party can bring a claim for an easement by necessity against the United States is an open question in the Ninth Circuit. *See The Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir. 2006) (stating it disagreed with the assertion that "it is well-settled that an easement by necessity against the United States exists," and interpreting Ninth Circuit case law as not resolving the issue). Plaintiff relies on three out-of-circuit district court cases which all hold that a party

---

[2] Accordingly, the Court will analyze the instant motion as if plaintiffs had alleged a claim under the QTA.

3

**United States District Court**

For the Northern District of California

can state such a claim against the United States. *See*, *e.g.*, *Burdess v. United States*, 553 F. Supp. 646 (D. Ark. 1982); *City of Denver v. Bergland*, 517 F. Supp. 155 (D. Colo. 1981); *Montana Wilderness Ass'n v. United States*, 496 F. Supp. 880 (D. Mont. 1980).

The Court finds it unnecessary to resolve this issue because, even assuming plaintiffs could bring a claim for easement by necessity under the QTA, such a claim would be time-barred.[3]   The QTA provides that "[a]ny civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g).

Plaintiffs contend that the claim accrued in 1994 when plaintiffs' request for permanent access was first denied.  Relatedly, plaintiffs argue that the claim for an easement by necessity did not exist until December 1994 when the thirteen legal parcels were officially recorded.  Plaintiffs also generally argue that prior to 1994 they reasonably believed that they would continue to have access to the Hooper Ranch. Plaintiffs particularly emphasize a "Reviewing Report" prepared by J.B. Witty, Chief Appraiser, which was attached to the appraisal report prepared in connection with the taking of the Hoopers' land. Witty's Reviewing Report states, in relevant part,

> Consummation of the proposed taking will result in serious severance damage to remaining land.  It will be left completely land locked, and even if access were gained, economic utilization, without the adjoining hay and pasture land would be difficult to obtain. . . .
>
> [I]t is my judgment that the fair market value of $122,500 and severance damage of $28,400, as estimated by the appraiser, represent sound and proper evaluations. . . . [I]n this instance the appraiser is of the opinion that the remaining land has been damaged somewhat less, owing largely to its size, location and the *more than ordinary possibility that reasonably adequate access may be acquired either over adjoining privately owned land or by way of the reservoir site itself.*

Bain Decl. Ex. 1 at 1-2 (emphasis added).  Plaintiffs also note that a 1959 Master Plan showed a proposed perimeter road (which was never built) which would have provided access to the Hooper Ranch, and thus they argue that both the government and the Hoopers expected that the Hoopers would

---

[3]  As a result, the Court finds it unnecessary to reach defendant's other contentions in support of its motion to dismiss.

4

**United States District Court**

For the Northern District of California

1   have access to their landlocked land.

2      The Court finds plaintiff's contentions lack merit, and that the statute of limitations began to run

3 in 1957 when the government acquired a fee simple title to the Hoopers' land. The Court finds *Long*

4 *v. Area Manager, Bureau of Reclamation*, 236 F.3d 910 (8th Cir. 2001), instructive. In *Long*, the

5 government condemned land in 1949 to create a reservoir and a park. The plaintiff continued to access

6 his property across a road located in the park. In 1988, the government closed the county road, thus

7 eliminating that access route to his property, and he sued under the QTA. The plaintiff claimed that his

8 right of access was never taken during the 1949 condemnation, and that his claim under the QTA

9 accrued in 1988. The *Long* court held that the plaintiff's claim was time-barred because his predecessor-

10 in-interest, who was a party to the condemnation action, was put on reasonable notice of the

11 government's adverse claim in 1949. *See id.* at 914 ("No qualifications were placed upon the taking in

12 this case, and thus the condemnation proceeding took all previous rights and interests, including the right

13 to use Lithia Road.").

14      Just as in *Long*, plaintiffs' predecessors were aware of the adverse claim by the government when

15 the land was condemned in 1957. As noted *supra*, numerous documents filed in connection with the

16 condemnation proceedings stated that the government was acquiring a fee simple title to the land. There

17 is no dispute that no easement was reserved to the Hoopers. In addition, plaintiffs do not dispute that

18 the Hoopers were informed during the condemnation proceedings of the exact value the appraiser

19 determined for taking access. *See* Bain Decl. Ex. 2 (letter dated August 27, 1957 from Fred G. Breining,

20 Ass. Chief, Real Estate Division, U.S. Army Corps of Engineers, to Charles R. Bell, attorney for the

21 Hoopers, stating that included in the purchase price of the Hoopers' land was $28,400 in severance

22 damage). Even assuming that the Hoopers saw the Reviewing Report and the Appraisal,[4] these

23 documents provide further notice that as a result of the taking, the Hooper Ranch would be landlocked,

24 and that the Hoopers were being compensated for severance damage. *See, e.g.*, Bain Decl. Ex. 1 at 1-2,

25 23. Regardless of the fact that the Hoopers and plaintiffs were able to access the Hooper Ranch after

26

27 _____

28     [4] Defendants correctly note that there is no evidence in the record to suggest that the Hoopers ever actually read these documents.

1957, the terms of the condemnation in 1957 were such that "plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g).   Accordingly, any claim under the QTA accrued in 1957 and is time-barred.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss without leave to amend.  (Docket No. 16).

**IT IS SO ORDERED.**

Dated:  November 28, 2006                                                   _____
                                                                                             SUSAN ILLSTON
                                                                                             United States District Judge